J. A. FITCHPATRICK, Appellant, v. FRANK N. FOWLER,
County Treasurer of Story County, Iowa, Appellee.

**Drainage:** ASSESSMENTS: WAIVER OF OBJECTION: PENALTY: STATUTE.
A statute authorizing the assessment of private property for a
public improvement will be construed most favorably to the prop-
erty owner, and his burden will not be increased by implications
not clearly necessary. Under this rule the statute providing that
the owners of land assessed for drainage purposes may waive in
writing any objection to the validity of the assessment and thus
obtain the right to pay the assessment in installments, with six
percent interest per annum, is held to provide a special contract
governing the rate of interest after maturity of an installment as
well as before, and such waiving owners are not liable for the
penalty which the statute provides shall attach to the delinquent
assessments of those who do not thus waive objection.

*Appeal from Story District Court.*—HON. C. G. LEE,
Judge.

SATURDAY, NOVEMBER 16, 1912.

THE opinion states the case.—*Reversed.*

*J. A. Fitchpatrick, pro se.*

*H. E. Hadley,* County Attorney, for appellee.

WEAVER, J.—Drainage district No. 1, in Story county

was duly established, and for the cost of the improvement thus authorized assessment was laid upon the lands included therein. Among the lands upon which the burden was laid were three forty-acre tracts owned by one W. E. Brotheras, which were assessed an aggregate tax of $3,289, and another forty acres owned by J. F. Ogilvie assessed $1,019. Availing themselves of the privilege provided by the statute (Code Supp. section 1989-a26), these owners filed a waiver of all objections to the validity of the tax, and thereby became entitled to have the same made payable in ten equal annual installments, with interest at 6 percent per annum. The body of the written waiver and agreement as executed by the landowners is in form as follows: "Nevada, Iowa, October 5, 1907. In consideration of having the right to pay the assessment mentioned in the within certificate in installments as provided by law, I do hereby agree that I will not make any objection of illegality or irregularity as to said assessment, and that I will pay the same with interest thereon at the rate of 6 percent per annum from date of said assessment." Thereafter said owners neglected and failed to pay certain installments falling due, and abandoned the said lands, whereupon the plaintiff, who held mortgage liens thereon, foreclosed the same, and acquired the title. Plaintiff then applied to the county treasurer, and offered to pay all the delinquent installments, tendering and offering to the treasurer the principal sum of each of said installments, with interest thereon at 6 percent from the date of the certificates. The tender so made amounted to the aggregate sum of $2,154 principal and $993.49 interest. The treasurer refused the tender, claiming that, under the statute, a penalty of 1 percent per month had accrued upon all the installments as well as upon the unpaid interest from the date when they became delinquent. Plaintiff, declining to comply with said demand, brought this action, alleging the facts above set forth, asking a peremptory order or writ of mandamus requiring the

treasurer to accept payment of said assessments on the basis
of said tender, and, upon receiving said sum or sums, to
make and deliver to the plaintiff suitable receipts therefor.
To this petition the defendant demurred generally.   The
demurrer was sustained, and, plaintiff electing to stand
upon the petition, judgment was entered against him for
costs.   From such ruling and judgment he appeals.

As the rights of the parties and the determination of
the appeal depend entirely upon the construction to be
given the section of the statute above cited, we here set
it out in full:

Section 1989-a26.   How paid—improvement certifi-
cates.   The special assessment for benefits made by the com-
missioners appointed for that purpose, as corrected and
approved by the board of supervisors, shall be levied at one
time by the board against the property so benefited, and
when levied and certified shall be payable at the office of
the county treasurer.   If the owner of any parcel of land,
lot or premises against which any such levy shall have been
made and certified, which is embraced in any certificate pro-
vided for in this section, shall within thirty days from the
date of such assessment promise and agree in writing in-
dorsed upon such certificate, or in a separate agreement, that
in consideration of having the right to pay his assessment in
installments, he will not make any objection of illegality or
irregularity as to the assessment of benefits, or levy of such
tax upon and against his property, but will pay said assess-
ment with interest thereon at such rate not exceeding six per
centum per annum as shall be prescribed by resolution of
the board, such tax so levied against the land, lot or premises
of such owner shall be payable in ten equal installments,
the first of which with interest on the whole assessment shall
mature and be payable on the date of such assessment, and
the others with interest on the whole amount unpaid annu-
ally thereafter at the same time and in the same manner
as the March semi-annual payment of ordinary taxes; but
where no such terms and agreement in writing shall be made
by the owner of any land, lot or premises then the whole
of said special assessment, so levied upon and against the
property of such owner, shall mature at one time and be due

and payable with interest from the date of such assessment, and shall be collected at the next succeeding March semi-annual payment of ordinary taxes. *All of such tax with interest shall become delinquent on the first day of March next after its maturity and shall bear the same interest with the same penalties as ordinary taxes.* And the board may provide by resolutions for the issuance of improvement certificates, payable to bearer, or to the contractors who have constructed the said improvement or completed part thereof within the meaning of this act in payment or part payment therefor, each of which certificates shall state the amount of one or more assessments or part thereof made against the property designating it and the owners thereof liable to assessments for the cost of the same, and said certificate may be negotiated. Such certificates shall transfer to the bearer, contractor or assigns all right and interest in and to the tax in every such assessment, or part thereof, described therein and shall authorize such bearer, contractor or assignee to collect and receive every assessment embraced in said certificate, by or through any of the methods provided by law for their collection, as the same mature. Such certificates shall bear interest not to exceed six percent per annum, payable annually, and shall be paid by the taxpayer to the county treasurer who shall receipt for the same and cause the amount paid to be applied to the payment of the certificate issued therefor. Provided, that any person shall have the right to pay the full amount of the tax so levied against his property, together with interest thereon to date of payment at any time he desires so to do even before the maturity of any certificates issued therefor. No certificate shall be issued or negotiated for the use of the drainage district for less than par value with accrued interest up to the delivery or transfer thereof. Should the costs of such work exceed the amount of benefits assessed and certificates issued, a new apportionment and levy of tax may be made and other certificates issued in like manner.

Abbreviating as much as is practicable without obscuring the meaning of the text, so far as it is immediately involved in this litigation, the provision is that, if the property owner shall "promise and agree in writing" that he will waive all objections pertaining to the regularity and

legal validity of the assessment upon his land *"and will pay said assessment with interest thereon at a rate not exceeding six percent per annum,"* the tax shall be made payable in ten annual installments, "but where no such terms and agreement in writing shall be made by the owner of any land" then the whole of said special assessment shall mature at one time and be due and payable, with interest from the date of such assessment, and be collected at the "next succeeding March semi-annual payment of ordinary taxes." Thus far, there is no apparent difficulty of construction. The trouble, if any there be, comes in the application of the clause which immediately succeeds the one last quoted, and reads as follows: "All of *such* tax with interest shall become delinquent on the first day of March after its maturity and shall bear the same interest with the same penalties as ordinary taxes." Stated briefly, the simple question is whether the words "such tax" are to be construed as including or applying to the entire assessment of the district lands without regard to the fact whether the taxpayer has or has not entered into the agreement aforesaid or is to be treated as applying solely to those cases in which no agreement is made and the entire tax becomes immediately due and payable.

The appellee contends for the construction first mentioned, and such is the view adopted by the trial court. The statute is not a model of clearness, but its general scope and purpose are not difficult of apprehension. One of its evident purposes is to foreclose, if possible, all question of the validity of the drainage proceedings, and thereby avoid litigation, and give assured value to the certificates or bonds issued in payment for the improvement. To insure this an offer is made of what we may call a premium for voluntary waivers to all legal objections to the assessment. The scheme by which this is to be accomplished contemplates in each instance that the property owner shall enter into a written contract, whereby, in consideration of time for pay-

ment of the tax, all of which would otherwise become due and payable at once, he waives all objection to the legal sufficiency of the assessment, and promises to pay the same in ten equal annual installments, with interest at an agreed rate not exceeding six percent. In other words, what was before a mere special assessment upon the property is converted into a binding promissory obligation to pay with a specified rate of interest; the payment being secured, of course, by the lien prescribed by the statute. It would further seem that, in order to stimulate these settlements, the statute proceeds to declare that, when the property owner fails to enter into such an agreement, "then the whole of said special assessment so levied upon the property of *such* owner shall mature at one time and be due and payable with interest from the date of *such* assessment and shall be collected at the next succeeding March semi-annual payment of ordinary taxes. All of *such* tax shall become due and delinquent on the first day of March next after its maturity and shall bear the same interest with the same penalties as ordinary taxes."

In our judgment "such tax" very clearly refers to the tax or assessment which has just been mentioned in the last preceding sentence or clause, and that is the assessment or tax "where no such terms and agreement in writing shall be made." This conclusion is emphasized and strengthened by the further provision in the same section that "such certificates shall bear interest not to exceed six percent per annum payable annually and shall be paid by the taxpayer to the county treasurer who shall receipt for the same and shall cause the amount paid to be applied to the payment of the certificate issued therefor." In other words, we construe the language in question not as providing a penalty which shall apply alike to all cases without regard to the written waiver and agreement, but rather as a provision *in terrorem,* under the influence of which the largest possible number of settlements and waivers may be obtained—

the penalty to be exacted from those only who do not accept the offer of time.  This reading requires no forced or strained construction of the statute.  For the purposes of collecting such special assessments, they are by this enactment separated into two classes.  One class embraces all assessments where the owners have entered into the prescribed contract, and the other class includes all where no such contract is made.  Speaking of the first class, it is provided that *such* tax *so* levied shall be payable in ten annual installments, with interest not to exceed 6 percent. Here "such tax" is very clearly limited in its application to assessments of the first class mentioned.  It is then provided, as we have already noted, that, when no contract is made, the whole of *"said* special assessment" upon the property of *such* owner shall be due and payable, with interest, and be collected with the next semi-annual collection of ordinary taxes.  "All of *such* tax with interest shall become delinquent on the first day of March next after its maturity and shall bear the same interest and penalties as ordinary taxes."  Here "such tax" just as clearly refers to assessments of the second class as the like words earlier in the section refer to assessments of the first class.  Such is the natural as well as the apparent grammatical connection between the words "such tax" and their antecedent.

Even if the words here used should be thought involved in any ambiguity or doubt, it would be the duty of the court to solve that doubt in favor of the property owner if it can be done without violence to the other provisions of the chapter.  The laws by which the cost of public improvements is met by special assessments upon private property supposed to be benefitted are at best drastic in nature and burdensome in operation, and the courts should be slow to increase those burdens by implications which are not clearly necessary.  Reading between the lines of this record, we can see an illustration of the harshness of results which are not infrequently suffered by individuals who happen to get in

the way of the march of public improvement. Here were evidently two landowners whose premises were already carrying a heavy load of mortgage indebtedness, and, when to this was added a tax of more than $25 per acre, they were driven to throw up their hands in despair, and abandon the property to the tax gatherer and the mortgagee. A statute which makes such incidental results possible, however beneficial it may be in its general application, should be given the most favorable construction of which it is reasonably capable to keep its consequential hardships within the narrowest practical limits. *Sargent v. Tuttle,* 67 Conn. 167 (34 Atl. 1028, 31 L. R. A. 822). See, also, *Brick Co. v. Smith,* 108 Iowa, 308. The construction contended for by appellee is not necessary to give effect to the plainly indicated legislative intent, and can not be upheld.

It follows that the judgment below must be reversed, and the cause remanded for further proceedings in harmony with the views here expressed.—*Reversed.*